11 F.3d 1072
 NOTICE: Federal Circuit Local Rule 47.6(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
John W. SHANNON, Acting Secretary of the Army, Appellant,
v.
CLEMENT-MTARRI COMPANIES, Appellee.
 No. 93-1268.
 United States Court of Appeals, Federal Circuit.
 Nov. 4, 1993.
 
 Before ARCHER, LOURIE and CLEVENGER, Circuit Judges.
 CLEVENGER, Circuit Judge.
 
 
 1
 The United States appeals the November 19, 1992 decision of the Armed Services Board of Contract Appeals (Board), which on reconsideration affirmed its July 8, 1992 decision that Clement-Mtarri Companies (Clement) is entitled to payment at the negotiated contract unit price for contaminated water removed in excess of 115 percent of the estimated contract quantity. Clement-Mtarri Cos., ASBCA No. 38170, 93-2 B.C.A. p 25,567, aff'g on reconsideration 92-3 B.C.A. p 25,192 (1992). The Board, rejecting the holdings in Bean Dredging Corp., ENGBCA No. 5507, 89-3 B.C.A. p 22,034 (1989) and comparable cases,* held that the grant of an equitable adjustment under the Variation in Estimated Quantity (VEQ) clause requires proof by the party seeking the adjustment of an actual increase or decrease in costs due solely to the variation above 115 percent or below 85 percent of the estimated quantity. We affirm.
 
 
 2
 * This is a companion case to Foley Co. v. United States, No. 93-5084 (Fed.Cir. Nov. 4, 1993), which the Government appealed in consolidated oral argument before this court. In Foley, we affirmed the judgment of the United States Court of Federal Claims awarding the contractor the contract unit price for the removal of sludge in excess of 115 percent of the estimated contract quantity. The relevant facts of the present appeal are recited briefly below.
 
 
 3
 On March 9, 1987, Clement contracted with the Government to close 23 contaminated sites at the Pine Bluff Arsenal in Arkansas. Clement completely discharged its contractual obligations. This appeal solely concerns the aspect of contaminated water removal under the contract. The Government agreed to pay Clement $360 per unit of contaminated water removed, based on an estimated quantity of 200 units, each unit representing 1,000 gallons. In anticipation that weather conditions might result in a significant increase from the estimated contract quantity and substantial delays, Clement included in the contract a contingency that in the event of a delay period due to extensive rains, when no other revenue generating activity could occur, Clement could still recover its overhead costs under the contract through the contaminated water removal activity. Heavy rains and one large snow fall during contract performance resulted in Clement's removal of 3,923 units.
 
 
 4
 The Government paid Clement $360 per unit for the first 230 units of contaminated water removed, representing payment of the contract unit price for 115 percent of the estimated quantity under the contract. On July 7, 1988, Clement filed a properly certified claim seeking $1,133,967.92 for the remaining 3,693 units of contaminated water removed. On November 28, 1988, the contracting officer (CO) rendered a final decision, denying Clement's claim and issuing a unilateral contract modification under the VEQ clause that established a unit price of only $15.09 for the units of contaminated water removed in excess of 115 percent of the estimated contract quantity. This new unit price reflected the CO's determination that the contract's VEQ clause entitled Clement to only its actual costs plus a reasonable profit for the removal of sludge in excess of 115 percent of the estimated contract quantity.
 
 
 5
 Clement sought review of the CO's decision before the Board, asserting entitlement to the full contract unit price of $360 for each unit of contaminated water removed in excess of 115 percent of the estimated contract quantity. The Board held that the contract's VEQ clause entitled Clement to $360 per unit of contaminated water removed in excess of the first 230 units, less the actual cost savings experienced by Clement due solely to the remaining 3,693 units of contaminated water removed.
 
 II
 
 6
 Section 609(b) of title 41 defines our standard of review for decisions of agency boards of contract appeals as:
 
 
 7
 [T]he decision of the agency board on any question of law shall not be final or conclusive, but the decision on any question of fact shall be final and conclusive and shall not be set aside unless the decision is fraudulent, or arbitrary, or capricious, or so grossly erroneous as to necessarily imply bad faith, or if such decision is not supported by substantial evidence.
 
 
 8
 41 U.S.C. Sec. 609(b) (1988). The interpretation of regulations which are incorporated into government contracts is a question of law requiring de novo review. Ingalls Shipbuilding, Inc. v. O'Keefe, 986 F.2d 486, 488 (Fed.Cir.1993). The legal interpretations of an agency board are accorded careful, but not binding, consideration in recognition of its expertise. Roseburg Lumber Co. v. Madigan, 978 F.2d 660, 665 (Fed.Cir.1992).
 
 III
 
 9
 In its appeal briefs and consolidated oral argument, the Government presented only arguments considered and rejected by this court in Foley, No. 93-5084 (Fed.Cir. Nov. 4, 1993). Accordingly, for the reasons set forth in our opinion in Foley, we affirm the decision of the Board in No. 38170, 93-2 B.C.A. p 25,567, aff'g on reconsideration 92-3 B.C.A. p 25,192 (1992).
 
 
 10
 LOURIE, Circuit Judge, concurring.
 
 
 11
 I agree with the result reached by the majority because the instant case is not meaningfully distinguishable from Victory, a precedential decision to which we are bound. In the absence of this precedent, however, I would have reversed the denial of the government's request for an equitable adjustment under the VEQ clause because I do not agree that the "plain meaning" or "express language" of the clause refers to a change in costs per unit.
 
 
 12
 The contractor and the government made a bargain respecting a specific estimated quantity, subject to a 15% variation above or below that amount. Anything beyond that is open to equitable adjustment. A change in costs due solely to that variation means the costs of raw material, labor, and other costs incurred solely by the variation, and the equitable nature of the adjustment requires a reasonable profit. Thus, if we were writing on a clean slate, the VEQ clause should be interpreted to require a determination of the net increase or decrease in total cost resulting from the variation, rather than a change in unit cost.
 
 
 13
 The parties did not bargain for, nor does an equitable adjustment permit, a windfall such as can occur under Victory or the majority's independent interpretation of the clause. I therefore would affirm only on the basis of the precedential authority of Victory.
 
 
 
 *
 Aoki Corp., ENGBCA No. PCC-62, 91-2 B.C.A. p 23,848 (1991); B & L Constr. Co., ENGBCA No. 5772, 91-1 B.C.A. p 23,612 (1990); B & L Constr. Co., ENGBCA No. 5700, 91-1 B.C.A. p 23,575 (1990)